UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES GREGOIRE DE ROTHSCHILD,

                  Plaintiff,

       - against -

JORDAN D. SERLIN,

                  Defendant.

**ORDER**

19 Civ. 11439 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       This action arises out of a failed business relationship.  Plaintiff Charles Gregoire

de Rothschild brings claims against Defendant Jordan D. Serlin for fraudulent inducement, fraud,

breach of contract, tortious interference with contractual relations, violation of the Investment

Advisors Act of 1940, negligent infliction of emotional distress, defamation, and loss of

reputation.  (Cmplt. (Dkt. No. 1) ¶¶ 98-160)

       Defendant Serlin has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the

following grounds:

1. Plaintiff's claims are barred by res judicata, given prior lawsuits in Florida state court in which Plaintiff's company, GDR Privée, unsuccessfully sued Defendant Serlin;

2. Plaintiff's claims are time-barred;

3. Plaintiff's fraud claims are duplicative of his breach of contract claim;

4. Plaintiff lacks standing to bring breach of contract claims and has not established a basis for piercing the corporate veil;

5. there is no private right of action under the Investment Advisors Act of 1940;

6. neither Florida nor New York recognizes a common law claim for loss of reputation; and

7.   the Complaint does not plead facts sufficient to establish claims for negligent infliction of emotional distress, defamation, and tortious interference with contract or prospective contractual relations.

(Def. Br. (Dkt. No. 37) 11-22)

For the reasons stated below, Defendant's motion to dismiss will be granted.

## BACKGROUND

I.   **FACTS**[1]

A.   **Parties**

Plaintiff de Rothschild is a New York resident who, prior to 2010, was successful and "highly regarded" within the finance industry, in which he had worked for nearly five decades.  (Cmplt. (Dkt. No. 1) ¶¶ 1, 32)  In 2010, Defendant Serlin was not well known in the finance industry, and he was searching for an executive to lead his company, Florida-based Conundrum Capital LLC ("Conundrum").  (Id. ¶¶ 2, 27, 32, 34)  Conundrum needed additional capital in order to become profitable.  (Id. ¶ 34)  When de Rothschild first met Serlin, he was the president and owner of GDR Privée, a financial planning company.  (Id. ¶ 33)

B.   **de Rothschild Joins Conundrum**

Serlin sought to persuade de Rothschild to help Serlin run Conundrum because he was "very impressed" with de Rothschild and "wanted [his] knowledge and experience" and connections.  (Id. ¶ 4)  Serlin "needed an esteemed partner that knew the finance industry and that others knew in the finance industry," and he was aware of "de Rothschild's positive reputation in the finance industry."  (Id. ¶¶ 34, 36)

In order to induce de Rothschild to come to Conundrum, Serlin offered to make de Rothschild's company, GDR Privée, a one-third member of Conundrum.  (Id. ¶ 39)  This

---

[1]  Unless otherwise noted, the following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendant's motions to dismiss.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

ownership share would provide de Rothschild with access to Conundrum's accountings and business transactions. (Id.) On the basis of this offer, de Rothschild signed Conundrum's Operating Agreement on June 10, 2010 on behalf of GDR Privée. (Id. ¶¶ 5, 40)

After de Rothschild joined Conundrum, Serlin persuaded de Rothschild to stay at Conundrum through several amendments to the Operating Agreement, each of which gave de Rothschild greater authority and compensation. The first of these amendments, in September 2010, made de Rothschild a 49 percent owner of Conundrum, granted him 50 percent of Conundrum's profits, and provided that "'any major, extraordinary or unusual decision must be approved in writing by both [GDR Privée, as represented by de Rothschild, and Serlin].'" (Id. ¶ 42; id., Ex. C, at 74) The second amendment, in March 2011, provided that through June 2011, Serlin would "inform CG de Rothschild 'in writing, in advance, of any non-standard expense[] which may be incurred by [Conundrum] in excess of $1,000.00' and that Serlin would be 'disallowed from incurring any such expense . . . [until de Rothschild] has been notified, in writing, and has responded to [Serlin] with [his] understanding that such an expense is justified.'" (Id. ¶ 45 (alterations in Complaint); see also id., Ex. C, at 76)

Through his knowledge, reputation and connections, de Rothschild brought to Conundrum an initial investment of $50,134,000 by the end of 2010, including a $50 million investment from Stephen Serlin, the Defendant's father, and a $50,000 investment from de Rothschild. (Id. ¶ 11) One year later, the value of these investments exceeded $177 million. (Id. ¶ 12)

## C.     Serlin Breaches the Operating Agreement

On at least five occasions between late 2011 and February 2012, de Rothschild asked Serlin to provide him with access to Conundrum's books and records, and its accounting records. (Id. ¶ 60) The Operating Agreement gave de Rothschild a right to see these records, but

Serlin never provided the documents to de Rothschild.  (Id. ¶¶ 60-64)  Serlin also never paid de Rothschild any portion of the fifty percent share of Conundrum's profits that de Rothschild was entitled to under the Operating Agreement.  (Id. ¶¶ 13, 49-50)  Under that agreement, de Rothschild's share of Conundrum's profits was – as of late 2011 – $11,062,500.  (Id. ¶¶ 13, 50)

Serlin dissolved Conundrum on February 29, 2012.  (Id. ¶ 55)  He did so without de Rothschild's knowledge, without seeking his written consent – as required by the Operating Agreement – and without distributing any monies to de Rothschild.  (Id. ¶¶ 51, 55-57)  In addition to his share of Conundrum's profits, de Rothschild was entitled – upon Conundrum's dissolution – to a "final distribution . . . equal to the net income, net loss, distributable cash, and other items to be shared equally between Serlin and CG de Rothschild."  (Id. ¶ 52)  De Rothschild never received a "final distribution."  (Id. ¶ 53)

Without de Rothschild's knowledge or written approval, in 2012 Serlin used Conundrum's capital to create a new company, Eagle International, LLC ("Eagle").  (Id. ¶¶ 68-70)  In order to attract investment in Eagle, Serlin created marketing material that was premised on Conundrum's 2010-2011 performance numbers.  (Id. ¶¶ 69-72; id., Ex. H, at 94-98)

### D.    Serlin Uses Law Enforcement to Ruin de Rothschild's Reputation

After Serlin dissolved Conundrum and used its funds to create Eagle, Serlin began making false complaints to law enforcement about de Rothschild.  (Id. ¶ 74)  Serlin also spread false rumors about de Rothschild in order to ruin his reputation.  (Id. ¶ 81)  For example, in February 2012, Serlin falsely reported to the New York City Police Department ("NYPD") that de Rothschild had sent the following threatening email to Serlin:  "You [will be] held responsible personally for all the consequences according [to] the laws, including penalties according [to the] tax code.  I will take everything from you.  You [will] pay with your blood."  (Id. ¶ 74 (alterations except for "[to]" in Complaint))  The NYPD subpoenaed de Rothschild's email

4

accounts in May 2012, and learned that Serlin had fabricated the alleged threatening email.  The NYPD then closed its investigation.  (Id. ¶ 76)

In 2013, Serlin complained to the Federal Bureau of Investigation (the "FBI") about de Rothschild.  Serlin then falsely told colleagues that de Rothschild was under investigation by the FBI.  (Id. ¶¶ 79-82)

As a result of Serlin's false complaints to the NYPD and the FBI, De Rothschild's reputation was damaged; he became known as someone who had a "dishonest character personally and in business" and who "skirt[ed] the law in his operation of business."  (Id. ¶ 83) "[I]t [also] became public knowledge that CG De Rothschild was having problems with his business partner and CG de Rothschild was deemed difficult to work with[.]"  (Id.)

Because of the harm Serlin caused to de Rothschild's reputation, "[t]he banking and finance community at large, including but not limited to bankers, investors, consultants, etc., ('Professionals') refused to work with CG de Rothschild[.]"  (Id. ¶ 85)  Moreover, because those in the financial community would not speak with de Rothschild – given his sullied reputation – he did not learn until January 2014 that Serlin had created Eagle using Conundrum's funds.[2] Plaintiff only learned of Serlin's misconduct as a result of retaining Brian Aryai of Icon Compliance Services to conduct an investigation of Conundrum's operations.  (Id. ¶¶ 91-96)

Aryai notified Serlin on January 31, 2014, that his refusal to "honor[] CG de Rothschild's requests" constituted "ongoing violations of the [Operating] Agreement."  (Id. ¶ 96) Serlin never paid de Rothschild his share of Conundrum's profits, however.  According to Plaintiff, he is owed at least $11,062,500 under the Operating Agreement.  (Id. ¶ 97)

---

[2] De Rothschild learned that Serlin had created Eagle in November 2013.  (Id. ¶ 92)

## II.    THE BROWARD COUNTY ACTION

On October 31, 2014, de Rothschild's company, GDR Privée, brought a derivative action on behalf of Conundrum against Serlin and Eagle in Broward County Circuit Court (the "Broward County Action").  (Def. Br. (Dkt. No. 37) at 9; Broward County Cmplt. (Dkt. No. 36-1))  In the Broward County Action, GDR Privée alleged that Serlin made misrepresentations to GDR Privée's principal, de Rothschild.  (Broward County Cmplt. (Dkt. No. 36-1 ¶¶ 29-45)  GDR Privée further complained that Serlin had not made available Conundrum's books and records as de Rothschild had requested (id. ¶¶ 46-47); made a false report to the NYPD accusing de Rothschild of threatening Serlin (id. ¶¶ 48-50); and unilaterally dissolved Conundrum and transferred its assets to Eagle without de Rothschild's or GDR Privée's knowledge or consent.  (Id. ¶¶ 51-81)

GDR Privée asserted twelve causes of action against Serlin and Eagle, including breach of fiduciary duty under Florida law; improper dissolution of Conundrum under the Operating Agreement and Florida law; interference with Conundrum's business relationships; and wrongful transfer of Conundrum's assets.  (Id. ¶¶ 82-143 (citing Fl. Stat. §§ 605.0406(1), 605.0710, 608.4225)

In June 2015, the Broward County Circuit Court dismissed the Broward County Action.  (Def. Br. (Dkt. No. 37) at 9; Dkt. No. 36-3)  The circuit court's dismissal was based on GDR Privée's repeated failure to comply with court orders, its failure to appear at hearings or file an opposition to defendants' motion to dismiss, and de Rothschild's "continual inappropriate contact" with Serlin, Serlin's family, and Serlin's associates.  (See Dkt. No. 36-3 at 2)  In a Final Judgment issued on April 21, 2016, the Broward County Circuit Court awarded Serlin and Eagle $51,585.50 in costs, attorneys' fees, and post-judgment interest.  (Dkt. No. 36-4)

GDR Privée appealed from the judgment in the Broward County Action.  The Florida Fourth District Court of Appeal and the Florida Supreme Court rejected GDR Privée's appeal in 2017.  (Dkt. Nos. 36-5, 36-6)[3]

## III.    PROCEDURAL HISTORY

The Complaint in the instant action was filed on December 13, 2019.  (Cmplt. (Dkt. No. 1))

Serlin moved to dismiss on July 10, 2020.  (See Dkt. Nos. 32, 34-38)

In an August 12, 2020 letter, Plaintiff requested that the Court conduct a pre-motion conference concerning his proposed motion to strike Defendant's motion to dismiss. (Dkt. No. 43)  Plaintiff argued that Defendant's motion should be struck because it relies on documents that are "impertinent and immaterial as they relate to litigation in Florida state court cases [to which] Plaintiff is not a party and for causes of action different from this litigation." (Id. at 1)  On August 13, 2020, this Court denied Plaintiff's request for a pre-motion conference, finding that the motion to strike would be futile, because the dismissal motion Plaintiff sought to strike was not a pleading, and was thus not susceptible to a motion to strike under Fed. R. Civ. P. 12(f).  (Order (Dkt. No. 45))

---

[3]  Defendant asserts that GDR Privée filed a second lawsuit against Serlin and Eagle in 2016, and that that lawsuit was dismissed in 2019 for failure to prosecute.  (Def. Br. (Dkt. No. 37) at 9)  In support of this assertion, Defendant has submitted a June 24, 2019 order in "Conundrum Capital LLC, Plaintiff, vs. Jordan Serlin, et al, Defendant[s]," Case No. CACE-16-005417, in Broward County Circuit Court.  (See Dkt. No. 36-7)  That order closes the case for "lack of prosecution re: May 17, 2019 Hrg."  (Id.)

## DISCUSSION

### I.      LEGAL STANDARDS

#### A.      Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

"'A statute of limitations defense, based exclusively on dates contained within the complaint or appended materials, may be properly asserted by a defendant in a Rule 12(b)(6) motion.'" Twumwaa v. Colvin, No. 13 Civ. 5858(AT)(JLC), 2014 WL 1928381, at *2 (S.D.N.Y. May 14, 2014) (quoting Gelber v. Stryker Corp., 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011)) (citing Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989)).  A motion to dismiss on statute of limitations grounds "'generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1).'" Id. at *2 (quoting Nghiem v. U.S. Dep't of Veterans Affairs, 451 F. Supp. 2d 599, 602 (S.D.N.Y. 2006), aff'd, 323 F. App'x 16 (2d Cir. 2009) (summary order)). "Rule 12(b)(6) provides 'the most appropriate legal basis' for such a motion . . . 'because expiration of the statute of limitations presents an affirmative defense.'" Id. (quoting Nghiem, 451 F. Supp. 2d at 602))  Therefore, in deciding such a motion, a court "'must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.'" Id. at *2 (quoting Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)).

## ANALYSIS

### I. STATUTE OF LIMITATIONS

#### A. Fraud

In New York, the statute of limitations for fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).  In Florida, the limitations period is four years, Fla. Stat. § 95.11(3)(j), and begins to run "when the plaintiff knew or should have known of the defendant's misrepresentations." Goodwin v. Sphatt,

114 So.3d 1092, 1095 (Fla. Dist. Ct. App. 2013); see also West Brook Isles Partner's 1, LLC v.
Commonwealth Land Title Ins. Co., 163 So.3d 635, 639 (Fla. Dist. Ct. App. 2015).

Here, the fraudulent conduct alleged in the Complaint – Defendant's misrepresentations inducing Plaintiff to join and stay at Conundrum, and Defendant's dissolution of Conundrum and diversion of Conundrum's assets to Eagle – occurred between 2010 and 2012.  (Cmplt. (Dkt. No. 1) ¶¶ 34-72, 98-116)  Plaintiff further alleges that he became aware of Defendant's fraudulent activity in January 2014, after hiring Icon Compliance Services to investigate Conundrum's operations.  (Id. ¶¶ 95-96)

The Court concludes that Plaintiff's fraud claims are time-barred under both New York and Florida law.

Under New York law, Plaintiff's fraud claim accrued in 2012, when the last alleged fraudulent act took place.  Accordingly, under an accrual theory, the statute of limitations for Plaintiff's fraud claims expired in 2018 – six years after the date of the last alleged fraudulent act in 2012.  Alternatively, under a discovery theory, Plaintiff's fraud claims expired in January 2016 – two years after de Rothschild learned that Serlin had dissolved Conundrum and diverted its assets to Eagle.

Under Florida law, assuming arguendo that Plaintiff did not discover, and should not have reasonably discovered, the alleged fraudulent activity until January 2014, the statute of limitations expired in January 2018.  The instant action was not filed until December 2019. (Cmplt. (Dkt. No. 1))

Accordingly, Plaintiff's fraud claims are time-barred under both New York and Florida law.

B.      **Breach of Contract**

Because the Operating Agreement provides that it is governed by Florida law,

Plaintiff's breach of contract claim is subject to Florida's five-year statute of limitations for

breach of contract claims.  See Fla. Stat. § 95.11(2)(b); Cmplt., Ex. B (Dkt. No. 1) at 69.  In

Florida, "[a] breach-of-contract claim accrues and the statute of limitations begins to run 'upon

breach of the contract.'" Fiorentino as Tr. of Fiorentino Family Split Purchase Tr. v. Mechoshade

Sys., LLC, CASE NO. 19-21117-CIV-ALTONAGA/Goodman, 2019 WL 7371814, at *5 (S.D.

Fla. Nov. 18, 2019) (quoting Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So.2d 571,

574 (Fla. Dist. Ct. App. 2006))

Here, Plaintiff alleges that Defendant breached the Operating Agreement at

various points between 2011 and February 2012 by (1) failing to pay Plaintiff a fifty percent

share of Conundrum's profits or a final distribution upon dissolving Conundrum; (2) incurring

non-standard expenses greater than $1,000 without Plaintiff's knowledge or approval; (3) failing

to make available to Plaintiff Conundrum's books, records, and financial statements; (4)

dissolving Conundrum without Plaintiff's knowledge or approval; and (5) transferring

Conundrum's assets to Eagle without Plaintiff's knowledge or consent.  (Cmplt. (Dkt. No. 1) ¶¶

49-72, 130)  Because the latest alleged breach occurred in February 2012 – when Serlin

dissolved Conundrum and used its assets to create Eagle – Plaintiff's breach of contract claim

expired in 2017.  Given that this lawsuit was not filed until 2019, Plaintiff's breach claim is time-

barred.

C.      **Tortious Interference and Negligent Infliction of Emotional Distress**

Plaintiff alleges that Defendant tortiously interfered with his business

relationships, and committed negligent infliction of emotional distress, by making false

allegations about Plaintiff to the NYPD in 2012 and to the FBI in 2013.  (Cmplt. (Dkt. No. 1) ¶
¶¶ 73-91, 142-48)[4]

Tortious interference and negligent infliction of emotional distress claims are
subject to a three-year statute of limitations in New York and a four-year statute of limitations in
Florida.  See N.Y. C.P.L.R. §§ 214(4), 214(5); Fla. Stat. §§ 95.11(3)(a), 95.11(3)(o).

Because Plaintiff's tortious interference and negligent infliction of emotional
distress claims are premised on conduct that took place no later than 2013, those claims expired
in 2016 under New York law, and expired in 2017 under Florida law.

### D.      Defamation

Defamation claims are subject to a one-year statute of limitations in New York
and a two-year statute of limitations in Florida.  See N.Y. § C.P.L.R. 215(3); Fla. Stat. §
95.11(4)(g).  In both states, defamation claims accrue when the alleged defamation occurs.  See
Norkin v. The Florida Bar, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018); Wilson v. Erra, 94
A.D.3d 756, 756 (2d Dept. 2012) (citing Gigante v. Arbucci, 34 A.D.3d 425, 426 (2d Dept.
2006); Teneriello v. Travelers Cos., 226 A.D.2d 1137, 1138 (4th Dept. 1996)).  Here, Plaintiff's
defamation claim is based on Defendant's alleged false reports to the NYPD and FBI in 2012
and 2013, and vague assertions that Defendant has been "speaking ill" of de Rothschild and
"spreading falsities about him" as recently as 2019.  (Cmplt. (Dkt. No. 1) ¶¶ 150-153)

Plaintiff's claims based on Defendant's false reports to the NYPD and FBI are
time-barred.  Although defamatory statements made in 2019 would be actionable, as discussed
below, Plaintiff has not pled sufficient allegations to state a claim for defamation.[5]

---

[4]  The Complaint also vaguely asserts that Defendant told unnamed "colleagues" that Plaintiff
was being investigated by the FBI, but Plaintiff provides no details concerning this alleged
conduct or when it took place.  (Id. ¶ 81)

E.      **Investment Advisers Act**

Plaintiff asserts a claim under the Investment Advisers Act of 1940 ("IAA") for violation of Rule 204-2, which sets out requirements that investment advisers must follow relating to maintenance of books and records.  (Cmplt. (Dkt. No. 1) ¶¶ 117-25 (citing 17 C.F.R.§ 275.204-2))

Claims under the IAA must be brought "not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  28 U.S.C. § 1658(b); see also 15 U.S.C. § 78c(a)(47) (defining the IAA as one of the "securities laws" to which the statute of limitations in 28 U.S.C. § 1658(b) applies).  The statute of limitations begins to run once "the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge."  Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1042 (2d Cir. 1992) (citing Ingenito v. Bermec Corp., 441 F. Supp. 525, 554 (S.D.N.Y. 1977)).  Here, Plaintiff claims that Defendant violated the IAA by failing to maintain Conundrum's books and records in an "easily accessible place," because Defendant "did not allow [Plaintiff] to view Conundrum's

---

[5]  The Complaint asserts a separate cause of action for "loss of reputation."  (Cmplt. (Dkt. No. 1) ¶¶ 156-60)  Neither New York nor Florida recognizes an independent cause of action for loss of reputation; in both states, any such claim is treated as a claim for defamation.  See Cohen v. Avanade, Inc., 874 F. Supp. 2d 315, 324-25 (S.D.N.Y. 2012) ("Many courts have held . . . that there is no independent action for damage to reputation under New York law; instead, a claim for damage to reputation is treated as a claim for defamation.") (citing Hengjun Chao v. Mount Sinai Hosp., 476 F. App'x 892, 895 (2d Cir. 2012) (summary order); Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 423 (E.D.N.Y. 2010); Baum v. Phillips, Appel & Walden, Inc., 648 F. Supp. 1518, 1537 (S.D.N.Y. 1986)); Rodriguez Diaz v. Abate, 598 So.2d 197, 198 (Fla. Dist. Ct. App. 1992) (false report to police that allegedly damaged plaintiff's reputation "state[d] a cause of action for defamation"); DeMarco v. Publix Super Markets, Inc., 360 So.2d 134, 136 (Fla. Dist. Ct. App. 1978) (dismissing claim for damage to reputation where plaintiff failed to make out a claim for defamation).  Accordingly, Plaintiff's loss of reputation claim is time-barred to the same extent as his defamation claim.

books" despite Plaintiff's requests to see them in late 2011 and early 2012.  (Cmplt. (Dkt. No. 1) ¶¶ 60, 122-23)  Accordingly, the statute of limitations for Plaintiff's IAA claim expired in 2014.

## II.      FAILURE TO STATE A CLAIM

### A.      Defamation

Under New York law, to state a claim for defamation, a "plaintiff must show '(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] per se, and (vii) not protected by privilege.'" Neal v. Asta Funding, Inc., No. 13 CV 2176(VB), 2014 WL 3887760, at *2 (S.D.N.Y. June 17, 2014) (quoting Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001)).  The complaint "must at least 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.'" Id. at *3 (quoting Mobil Data Shred, Inc. v. United Bank of Switz., No. 99 Civ. 10315 SAS, 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000)).

Similarly, under Florida law, a plaintiff asserting a claim for defamation must allege that "1) the defendant published the false statement, 2) the statement was communicated to a third party, and 3) the plaintiff suffered damages as a result of this publication." Morrison v. Morgan Stanley Props., No. 06-80751-CIV, 2008 WL 1771871 at *10 (S.D. Fla. Apr. 15, 2008) (citing Nautica Int'l, Inc. v. Intermarine USA, L.P., 5 Supp. 2d 1333, 1344 (S.D. Fla. 1998)).  A plaintiff must also "'allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred.'" Id. (quoting Fowler v. Taco Viva, Inc., 646 F. Supp. 152, 157-58 (S.D. Fla. 1986)).

As discussed above, the only defamation claim that would be timely is Plaintiff's claim that Serlin defamed him "as recently as . . . 2019[,]" by "consistently . . . speaking ill of

14

CG de Rothschild and spreading falsities about him so as to defame CG de Rothschild's previously good reputation and goodwill."  (Cmplt. (Dkt. No. 1) ¶ 153)  In support of this claim, Plaintiff attaches to the Complaint statements from Iuliun Bucur, Frederik de Badrihaye, Fred Schuurman, and Dr. Ronald Chaikin in which each states, in substance, that he cannot do business with de Rothschild because of his dispute with Serlin.  (See id. at 117 (Bucur statement that he has "stopped [doing] any business" with de Rothschild "because of the sudden closure & the alleged embezzlement of about Two Hundred Million Dollar[s] ($200 Million) by Jordan D. Serlin"); at 119 (Badrihaye statement that it is "appalling what is going on between you and Mr. Serlin"; "as long as this issue is not resolved, I will have to take distance on any business matters that we may have or will have in the future"); at 121 (Shuurman statement that he "stopped [doing] any business" with de Rothschild "because of the sudden closure of Conundrum Capital, [LLC] & the alleged embezzlement of about Two Hundred Million Dollar[s] ($200 Million) by Jordan D. Serlin & family & Associates"); at 123 (Chaikin statement that it is "truly heartbreaking [] what is going on between you and Mr. Jordan D. Serlin[,]" and "as long as this issue is not resolved, I will have to take a leave on any business matters that we may have discussed or will have in the future").

Plaintiff's allegations are not sufficient to state a claim for defamation under either New York or Florida law.  Beyond vaguely asserting that Serlin's defamatory statements were made "as recently as 2019," the Complaint does not identify or describe the alleged defamatory statements, state when the statements were made, or identify the third parties to whom the statements were made.[6]  Moreover, the statements of Bucur, Badrihaye, Shuurman,

---

[6] The unsworn emails and statements attached to Plaintiff's opposition brief (see Pltf. Opp., Ex. B (Dkt. No. 34-2) at 2, 5-12) are not sufficient to salvage his defamation claim.  As an initial matter, and as discussed above, in ruling on Defendant's motion to dismiss this Court may

and Chaikin attached to the Complaint do not demonstrate that Serlin has defamed de

Rothschild; these individuals merely state that they cannot do business with de Rothschild

"because of what is going on between" de Rothschild and Serlin, or because Serlin closed and

allegedly embezzled $200 million from Conundrum.  (Id. at 117-23)

      In sum, the Complaint's factual allegations do not state a claim for defamation.

---

consider the facts alleged in the Complaint, documents attached to the Complaint as exhibits, and
documents incorporated by reference in the Complaint.  DiFolco, 622 F.3d at 111 (citing
Chambers, 282 F.3d at 152; Hayden, 180 F.3d at 54).  Materials attached to a brief opposing a
Rule 12(b)(6) motion may not – unless the plaintiff is proceeding pro se – be considered in
determining a complaint's adequacy.  See Franza v. Stanford, No. 16-CV-7635 (KMK), 2019
WL 452053, at *4 (S.D.N.Y. Feb. 5, 2019) ("[W]hen the plaintiff is pro se, the Court may
consider 'materials outside the complaint. . . .'") (quoting Alsaifullah v. Furco, No. 12-CV-2907,
2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)); Detko v. Blimpies Rest., 924 F. Supp.
555, 556 n.1 (S.D.N.Y. 1996) (affidavits attached to defendant's motion to dismiss papers not
considered, because they were "materials outside the pleadings," and "'Rule 12(b)(6) does not
give the district court authority to consider matters outside the pleadings'") (quoting LaBounty v.
Adler, 933 F.2d 121, 123 (2d Cir. 1991)).  Moreover, in assessing the adequacy of the
Complaint, this Court cannot rely on statements that are unsworn and do not contain a proper
affirmation as to their truth.  See 28 U.S.C. § 1746; Vaher v. Town of Orangetown, N.Y., 916 F.
Supp. 2d 404, 425-26 (S.D.N.Y. 2013) (refusing to consider exhibits attached to memorandum of
law that were not "properly identified or authenticated" and which were not incorporated in
complaint); Curto v. Med. World Commc'ns, Inc., 388 F. Supp. 2d 101, 114 (E.D.N.Y. 2005)
(new facts set forth in memorandum of law were "unsworn statements [] not properly before the
Court," and therefore "w[ould] not be considered'"); Rafkind v. Oxford Capital Sec., Inc., No.
92 CIV. 2354 (JSM), 1997 WL 328067, at *1 (S.D.N.Y. June 16, 1997) ("An unsworn
affirmation is valid if it is a writing of the individual . . . submitted in substantially the following
form:  'I declare (or certify, verify, or state) under penalty of perjury that the following is true
and correct.  Executed on (date). (Signature).'") (quoting 28 U.S.C. § 1746(2)).  Finally, and in
any event, the emails and statements submitted by Plaintiff do not demonstrate (1) that Serlin
made defamatory statements about Plaintiff or (2) that Serlin's alleged defamation occurred
within the applicable limitations periods.  (See Pltf. Opp., Ex. B (Dkt. No. 34-2) at 2 (Serlin
authored "about 20 postings on the internet" that were intended to "[b]lock" de Rothschild from
"access[ing] any clients currently controlled Fraudulently by Jordan Serlin" and which prevent
de Rothschild from "generat[ing] income"); at 5 (citing "negative online postings about" de
Rothschild); at 6 (referring to "dreadful online slanders"); at 11 (referring to "derogatory and
inflammatory information which has been either directly or indirectly connected to [de
Rothschild] (via the internet)"); at 9 ("Serlin[] defamed Charles G. de Rothschild continually &
threatens me and Charles"); at 10 ("Around the end of 2013 Jordan D. Serlin has been boasting
to me that he has been publicly defaming Charles Gregoire de Rothschild and hopes to injure his
business."); at 12 (citing "bad remarks against [de Rothschild's] reputation" posted "on the
internet . . . by Jordan [D.] [S]erlin . . . [s]ince 2011-2020"))

16

B.      **Investment Advisers Act**

As noted above, the Complaint includes a claim under the Investment Advisers

Act of 1940 for violation of Rule 204-2, which sets forth record-keeping requirements for

investment advisers.  (Cmplt. (Dkt. No. 1) ¶¶ 120-23 (citing 17 C.F.R.§ 275.204-2))  The only

private cause of action available under the IAA is a limited right under Section 215 to "have an

investment advisory contract voided if the formation or performance of the contract violates the

Advisers Act."  In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 262 (S.D.N.Y.

2006) (citing Transamerica Mortg. Advisors v. Lewis, 444 U.S. 11, 24 (1979)).  Here, Plaintiff

alleges that Serlin violated the IAA by not permitting "de Rothschild to view Conundrum's

books." (Cmplt. (Dkt. No. 1) ¶¶ 122-23)  Plaintiff does not contend that the Operating

Agreement is an investment advisory contract, however, nor does he seek to void the Operating

Agreement.  Accordingly, the Complaint does not state a claim under the IAA.

III.    **LEAVE TO AMEND**

"[I]t is often appropriate for a district court, when granting a motion to dismiss for

failure to state a claim, to give the plaintiff leave to file an amended complaint."  Van Buskirk v.

The N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (citing Branum v. Clark, 927 F.2d 698, 705

(2d Cir. 1991)).  "Leave to amend should be freely granted, but the district court has the

discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or

undue prejudice to the opposing party."  Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir.

2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Koehler v. Bank of Berm. (N.Y.) Ltd.,

209 F.3d 130, 138 (2d Cir. 2000)).  "'Where it appears that granting leave to amend [would be

futile or] is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to

amend.'"  Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting

Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).

17

In his opposition brief, Plaintiff requests leave to amend in the event that this Court finds the Complaint to be "deficient in any regard." (Pltf. Opp. (Dkt. No. 34) at 20 n.2) Defendant opposes the request, arguing that any amended complaint would be futile. (Def. Reply (Dkt. No. 38) at 7-8)

The Court concludes that leave to amend should be denied on futility grounds. Plaintiff has offered no plausible argument that amendment could render his claims timely. The only timely allegation in the Complaint – that Defendant defamed Plaintiff "as recently as 2019" – is vague and conclusory, and Plaintiff has not offered anything suggesting that this defect could be cured upon amendment. Accordingly, leave to amend is denied.

## CONCLUSION

Defendant's motion to dismiss is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 35).

Dated: New York, New York
      March 6, 2021           SO ORDERED.

                            Paul G. Gardephe
                            United States District Judge